### LION BONDING & SURETY CO. v. O'KELLY. (No. 2268.)

(Court of Civil Appeals of Texas. Texarkana. May 14, 1920. Rehearing Denied June 3, 1920.)

**1. Municipal corporations ⬅══ 367—Surety which assumed to complete contract with city obligated to use reasonable care to minimize cost.**

Where city canceled contract for construction because contractor was financially embarrassed, when contractor's surety undertook to take over and complete work, it was under duty to use reasonable care and good faith to do so at minimum cost, and to account to contractor for difference between cost and amount received from city, a duty not escaped by letting the contract to a construction company for an arbitrary sum.

**2. Appeal and error ⬅══215(1) —Charge not objected to when given cannot be considered.**

The Court of Civil Appeals cannot consider on defendant's complaint a charge not objected to by it when given.

**3. Appeal and error ⬅══245—Absence of attorney from courtroom insufficient to justify consideration of assignment without objection.**

Absence of defendant's attorney from the courtroom when the court defined good faith in its charge, under the circumstances, held insufficient to justify the Court of Civil Appeals in considering, in the absence of objection, assignment of error complaining of such charge.

Appeal from District Court, Harris County; Ewing Boyd, Judge.

Suit by John O'Kelly against the Lion Bonding & Surety Company. From judgment for plaintiff, defendant appeals. Affirmed.

A. B. Wilson, of Houston, for appellant.
Cooper & Merrill, of Houston, for appellee.

HODGES, J. In December, 1915, O'Kelly, the appellee, entered into a contract with the city of Beaumont, by the terms of which he undertook to construct a wharf and dock in consideration of the payment by the city of $65,536. To secure the performance of his contract, O'Kelly executed two bonds, aggregating $16,500 with the appellant as his surety. In June, 1916, after he had partly performed his undertaking, the city of Beaumont canceled the contract, upon the ground that O'Kelly was unable to complete it. Appellant as surety upon the bonds was notified, and thereafter elected to take over the work and complete the contract according to its terms in order to protect itself against liability for damages. This suit was filed by the appellee to recover the sum of $12,608.35, alleged to be the difference between the amount received by the appellant from the city of Beaumont and the reasonable cost of completing the work; and also to recover the sum of $3,500 as the value of tools and implements belonging to the appellee which the appellant used in doing the work. In addition to damages claimed, the appellee prayed for the cancellation of a deed of trust given by him to the appellant on a tract of land for the purpose of securing the latter against loss by reason of becoming his surety on the bonds above mentioned.

The appellee pleaded, in substance, the following facts: Up to the 6th of June, 1916, he had performed work of the value of $29,304.33 and had received from the city therefor the sum of $23,019.65, leaving unpaid on account of the work performed the sum of $6,284.68. The city reserved the right to take from the contract a part of the work amounting to $5,047.07, leaving the net contract price of $60,488.30. The reasonable cost of completing the work after the city had terminated appellee's contract was $24,895.80, which was $12,608.35 less than the aggregate amount due from the city upon the completion of the contract. When the city on June 6, 1916, declined to permit the appellee to proceed further under his contract, the appellant immediately arranged to take over and complete the work and entered into a contract for that purpose. Upon the completion of the work, appellant received and collected from the city the sum of $37,468.56 as the unpaid portion of the contract price. When appellant

took over the work for the purpose of completing the same and thereby securing its release from liability on the bonds, it became and was its duty to exercise ordinary and reasonable care, prudence, skill, and economy in the prosecution of the work, to complete the same at a reasonable cost and expense, and to not unnecessarily or unreasonably increase such cost and expense, and to account to appellee for the difference between such reasonable cost and expense and the sum received from the city on account of the contract. That, notwithstanding the duty and obligation above referred to, the appellant, in violation of the appellee's rights, neglected, failed, and refused to exercise such reasonable and ordinary care, economy, and skill in the completion of the work for the purpose of keeping the cost thereof within reasonable bounds, failed to make an investigation to determine what would be the reasonable cost of completing the work, failed to advertise such work, failed to take bids thereon or otherwise to invite competition, failed to secure the opinion and advice of engineers or others skilled in such matters as to the reasonable cost of completion; but, in violation of its duty to appellee, immediately entered into a contract with the McKenzie Construction Company for the completion of the work, and further obligated itself to pay to said company additional compensation for the extra material and labor included in the contract between the appellee and the city, but not included in the contract between the appellant and the McKenzie Construction Company. If the appellant had exercised ordinary and reasonable care, skill, economy, prudence, and good faith toward appellee, it could and would have secured the completion of said structure for a price not exceeding $24,859.35; and, if it had so completed the work at the reasonable cost thereof, there would have remained in its hands the difference between the above sum and the amount received from the city, the sum of $12,608.35, for which amount he prayed judgment.

To this portion of the petition the appellant specially excepted on the ground that it failed to state the facts necessary to constitute a liability for the amount sued for. The exception was overruled, and the case submitted to the jury on special issues.

The first question submitted required the jury to find whether or not any part of the money collected by the appellant from the city of Beaumont on account of the contract was expended by it otherwise than in good faith under the belief that it was liable for the sums disbursed or that it was necessary or expedient to make such disbursements. The jury answered that question in the affirmative; and, in answer to the second question, found the amount so disbursed to be $1,525.-53. They further found that the value of the tools taken over and retained by the appellant amounted to $3,500. Upon those findings the court rendered judgment in favor of the appellee for the sum of $5,025.53 and also canceled the deed of trust before referred to.

[1] The first error assigned is the action of the court in overruling the appellant's exception to the petition, and the second challenges the sufficiency of the evidence to sustain the finding that appellant had expended any portion of the amount paid over for the completion of the contract otherwise than in good faith. The testimony showed that, when the appellant took over the contract, the city still owed the appellee a considerable balance on the value of the work he had performed up to that time. It appears that appellee became financially embarrassed and was unable to discharge several thousand dollars of debts for labor and material, and it was for that reason that he was not permitted to further execute the contract. But the question as to whether the city wrongfully refused to permit him to continue his contract is not necessarily involved in any of the issues presented. The appellee testified that, when he ascertained the objection of the city to his continuance of the work, he induced one McKenzie to go to Beaumont, investigate the work, and make a bid for its completion. He states that McKenzie agreed with him that the work could be completed for the sum of $27,200. Thereafter McKenzie and the attorney for the appellant had a conference, and McKenzie was offered by that attorney $35,-000 to complete the contract. There was also a provision for the payment of extra consideration for what were termed "extras." Assuming that the appellant had a right to take over and complete the contract with the city, it did not follow that the appellee then had no further interest in its fulfillment. He was still liable personally for its performance according to the original terms. The appellant's right to undertake its completion was that of a surety acting for its own protection. In a sense, when the appellant undertook to complete the contract it became an agent or trustee for the appellee; it owed him the duty of using reasonable economy and ordinary care and diligence in the performance of that trust. Had the appellant elected to have the work done under its own immediate supervision, it would have been its legal duty, not only to proceed in good faith in the execution of the contract, but to exercise reasonable care and economy in the purchase of material and the employment of labor. Appellant did not escape that duty by letting the contract to the McKenzie Construction Company. It could not arbitrarily agree to that sum regardless of the conditions under which it was made. If the facts alleged by the appellee were true, the appellant failed to exercise the proper degree of care, diligence, and economy in letting the contract to the

McKenzie Construction Company for the completion of the work. The state of the evidence is such that the jury might have concluded that the appellant carelessly let the contract to the McKenzie Construction Company, not only for more than it was reasonably worth to perform that work, but for more than it could, by the exercise of reasonable diligence, have secured a contract for that purpose. There was evidence showing that other competent contractors, had they been given the opportunity, could and would have completed the work for several thousand dollars less than the amount which the appellant agreed to pay to the McKenzie Construction Company. The assignments are overruled.

[2, 3] Appellant also complains of the charge of the court defining "good faith." After the jury had retired, they asked the following question of the court: "Does, in the intent of your charge, poor judgment constitute bad faith?" The court then gave written instructions defining "good faith." No exceptions or objections were at the time presented to this charge. It appears from the appellant's brief that its attorney was then absent, and this is assigned as the reason why no objection was presented. The fact that the charge was not objected to is a sufficient answer to the assignment. The absence of the attorney was, under the circumstances, not sufficient to justify us in considering the assignment without an objection.

The remaining assignments of error have been carefully considered and are overruled.

The judgment will be affirmed.

---

⬩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes